FILED

11:10 am, 10/4/21

Margaret Botkins
Clerk of Court

# UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>v.<br><br>**GREGORY MICHAEL SAMUEL TOTH,**<br><br>                Defendant. | **CRIMINAL COMPLAINT**<br>Case Number: 21-MJ-57-F |

I, Jill Paxton, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

## COUNT ONE

On or about October 1, 2021, within the exterior boundaries of Yellowstone National Park, in the District of Wyoming, the Defendant, **GREGORY MICHAEL SAMUEL TOTH,** did unlawfully commit assault with a dangerous weapon, with intent to do bodily harm.

In violation of 18 U.S.C. § 113(a)(3).

## COUNT TWO

On or about October 1, 2021, within the exterior boundaries of Yellowstone National Park, in the District of Wyoming, the Defendant, **GREGORY MICHAEL SAMUEL TOTH,** did unlawfully seize, confine, inveigle, decoy, kidnap, abduct, and carry away and hold the victim for the purpose of committing assault with a dangerous weapon, with intent to do bodily harm.

In violation of 18 U.S.C. § 1201(a)(2).

## COUNT THREE

On or about October 1, 2021, within the exterior boundaries of Yellowstone National Park, in the District of Wyoming, the Defendant, **GREGORY MICHAEL SAMUEL TOTH,** did unlawfully obtain and exercise unlawful possession over the property of another with the purpose to deprive the owner of the property.

In violation of 36 C.F.R. § 2.30(a)(1).

## COUNT FOUR

On or about October 1, 2021, within the exterior boundaries of Yellowstone National Park, in the District of Wyoming, the Defendant, **GREGORY MICHAEL SAMUEL TOTH,** did unlawfully possess a controlled substance – to wit: marijuana.

In violation of 36 C.F.R. § 2.35(b)(2).

## COUNT FIVE

On or about October 1, 2021, within the exterior boundaries of Yellowstone National Park, in the District of Wyoming, the Defendant, **GREGORY MICHAEL SAMUEL TOTH,** did unlawfully operate or was in actual physical control of a motor vehicle while under the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that rendered him incapable of safe operation.

In violation of 36 C.F.R. § 4.23(a)(1).

## COUNT SIX

On or about October 1, 2021, within the exterior boundaries of Yellowstone National Park, in the District of Wyoming, the Defendant, **GREGORY MICHAEL SAMUEL TOTH,** did unlawfully carry and store a bottle, can or other receptacle containing an alcoholic beverage that was open, or had been open, or whose seal was broken or the contents of which were partially removed, within a motor vehicle in a park area.

In violation of 36 C.F.R. § 4.14(b).

I further state that I am a United States Park Ranger with the National Park Service and that this complaint is based on the following facts:

*(See attached Sworn Statement)*

Continued on the attached sheet and made a part hereof.

_____
Signature of Complainant
Jill Paxton

Sworn to before me and subscribed via telephone,

10-1-21     at     Mammoth Hot Springs, Wyoming
Date                                  City and State

HON. MARK L. CARMAN
Magistrate Judge, United States
District Court
Name & Title of Judicial Officer          Signature of Judicial Officer

SWORN STATEMENT IN SUPPORT OF CRIMINAL COMPLAINT
UNITED STATES PARK RANGER JILL PAXTON
*United States v. Gregory Michael Samuel Toth*

## BACKGROUND

1. I am a United States Park Ranger for the National Park Service and I am located in Yellowstone National Park in the District of Wyoming. I have been a Federal Law Enforcement Officer with the National Park Service since June of 2014. I graduated from the Southwestern Community College Seasonal Law Enforcement Training Program in November 2013 and the Land Management Police Training Program at the Federal Law Enforcement Training Center in February 2020, after which I completed the Field Training Evaluation Program at Yellowstone National Park. I am a graduate of Furman University with a Bachelor's Degree in English and a minor in Ancient Roman and Greek Studies. I am also a graduate of the University of South Carolina with a Master's Degree in Criminology and Criminal Justice.

2. The information in this affidavit is based on my personal knowledge and/or information provided to me by other law enforcement officers and individuals. The information in this affidavit is provided for the limited purpose of establishing probable cause. The information is not a complete statement of all the facts related to this case.

3. Based on the facts set forth in this sworn statement, there is probable cause to believe that Gregory Michael Samuel TOTH has violated 18 U.S.C. § 113(a)(3) – Assault with a Deadly Weapon, 18 U.S.C. § 1201(a)(2) - Kidnapping, 36 C.F.R. § 2.30(a)(1) – misappropriation of property, 36 C.F.R. § 2.35(b)(2) – Possession of a Controlled Substance, 36 C.F.R. § 4.23(a)(1) – Driving while under the influence of alcohol and/or drugs, 36 C.F.R. § 4.14(b) – open container of an alcoholic beverage, and 36 C.F.R. § 4.2(b) – driving with suspended license (state law).

**SWORN STATEMENT IN SUPPORT OF CRIMINAL COMPLAINT**
**UNITED STATES PARK RANGER JILL PAXTON**
*United States v. Gregory Michael Samuel Toth*

## INVESTIGATION

1. On October 01, 2021 at approximately 0619 hours, Grant Law Enforcement was paged by Yellowstone National Park dispatch for an assault. The victim of the assault called dispatch from Fishing Bridge RV Park and was told to drive to West Thumb Junction along the Grand Loop Road. The victim, who was with a coworker, was concerned that the assailant was following them and would confront them before Law Enforcement arrived on scene. The victim stated the assault occurred at Fishing Bridge RV Park.

2. Both West Thumb Junction and Fishing Bridge RV Park are within the exterior boundaries of Yellowstone National Park in the District of Wyoming and is property owned by the United States.

3. I arrived at West Thumb and identified the victim as EF by his Wyoming driver's license and identified the coworker who drove EF away from Fishing Bridge RV Park as Witness 1 (W1) by his Wyoming driver's license. I identified the assailant as Gregory Michael Samuel TOTH, who was later positively identified by his Wyoming driver's license.

4. I asked EF what occurred that night, from September 30th to October 1st. EF stated that he has known TOTH for approximately 32 years, that TOTH had just gotten out of jail for kidnapping and assaulting an ex-girlfriend, and that he had vouched for TOTH to get him a job with Triple A contracting company. EF stated that he and TOTH share a trailer in the Fishing Bridge RV Loop. By the description EF gave, USPR Chuvarsky was able to identify the site as B63. EF stated that TOTH is usually talkative, however on the afternoon of September 30th, TOTH became quiet and began watching him unusually close. EF stated when he asked TOTH questions, TOTH would give one-word replies, which was abnormal.

**SWORN STATEMENT IN SUPPORT OF CRIMINAL COMPLAINT**
**UNITED STATES PARK RANGER JILL PAXTON**
*United States v. Gregory Michael Samuel Toth*

EF started he called his ex-girlfriend and told her that TOTH was acting very oddly and that he was worried about him.

5. EF stated that he and another coworker, W2, drove to Cody, Wyoming that night to go to the Walmart there. EF stated while at Walmart, TOTH called him and began accusing him of having sex with TOTH's ex-girlfriend. TOTH told EF that he knew where he was and that he was going to come to Cody to "find the car and deal with us [them] properly." EF stated that when he and Bernett were driving home, approximately 20 miles from Cody, towards Yellowstone, EF observed TOTH's truck, described as a blue, old model, ford, with a topper and Wyoming license plates, parked in the Cody-bound lane of travel with his bright head lights on. EF stated that W2 was able to drive around the vehicle and that they continued home at a high rate of speed to avoid TOTH.

6. EF stated that W2 dropped him off at his trailer and left with the vehicle so that TOTH would think that no one was in the trailer. EF stated he went to sleep, then woke around 0522 hours to his mobile phone ringing. EF stated he did not answer but observed that it was TOTH calling. EF stated shortly thereafter, someone started banging on the door to the trailer. EF stated TOTH called him again and he did not pick up. The banging on the door continued. EF stated TOTH called him a third time and he answered the phone. TOTH told him to answer the door and he did. EF showed me the call history on both EF's old and new mobile phone call history logs. I observed 2 missed calls from TOTH (3076961699) at 0306 hours, 2 more missed calls at 0522 hours, and 1 answered call at 0522 hours.

SWORN STATEMENT IN SUPPORT OF CRIMINAL COMPLAINT
UNITED STATES PARK RANGER JILL PAXTON
*United States v. Gregory Michael Samuel Toth*

7. EF stated as he opened the door to the trailer, TOTH pushed on the door, and rushed into the trailer. EF stated TOTH grabbed him and "threw me [him] down" to the floor by the couch. EF stated TOTH then grabbed him with "both hands around my [his] neck" and began choking him. EF stated he "almost blacked out several times."

8. EF stated that while choking him, TOTH "took his knife out and put it to my [EF's] throat telling me he was going to kill me for what I've done." EF stated TOTH put the knife to his throat several times while TOTH called him a liar and told him that he knew the truth, meaning he knew that EF was sleeping with TOTH's ex-girlfriend. I asked EF to describe the knife. EF stated the knife was a folding knife with an approximate 3-3.5-inch knife blade, with a black handle. EF stated that the blade was probably silver but was not certain.

9. I asked how long this went on for. EF estimated between five and fifteen minutes. I asked EF if he knew TOTH's ex-girlfriend. EF stated he had never met her. EF stated TOTH eventually let him up and "made me [him] sit in my room." EF stated that TOTH "kept me [him] from leaving my [his] room and stated, 'don't worry I'll give you a chance before I kill you, I'll let you try and fight me then I'll shoot you in the head.'" EF stated TOTH kept accusing him of sleeping with his ex-girlfriend and lying about it. EF stated TOTH grabbed one of EF's old phones stating he had the girlfriend's phone number. EF stated TOTH went through his phone without permission, was unable to find proof of any conversations, then began stating that EF deleted all the proof to cover his tracks.

10. I asked EF if TOTH had had any alcohol. EF stated TOTH had drunken a large amount of vodka that night. I asked if TOTH did any drugs. EF stated that TOTH uses marijuana, and

**SWORN STATEMENT IN SUPPORT OF CRIMINAL COMPLAINT**
**UNITED STATES PARK RANGER JILL PAXTON**
*United States v. Gregory Michael Samuel Toth*

that his last arrest included charges for methamphetamine, but he was unsure if he had done any that night.

11. EF stated TOTH began stating that everyone at their work was helping EF to cover his tracks. EF stated that TOTH stated that his coworkers were intentionally running heavy equipment around him to help cover sounds of screaming. EF stated that TOTH then told him that EF was "coming with him, let's go."

12. TOTH then began grabbing items that belong to EF and to an old roommate, TC, and began putting those items in TOTH's truck. TOTH removed EF and TC's property from the trailer without permission. TOTH then told EF to get into his truck. EF stated when he was allowed outside of the trailer, he immediately began running to the "right" and ran towards W1, who was driving out of Fishing Bridge to drive to work at Old Faithful. EF stated he told W1 what had just occurred, that he immediately called 911, and that they then drove southbound towards West Thumb. EF stated he was very worried that TOTH would follow them.

13. I spoke with W1 while he was on scene at West Thumb. I asked W1 if he had seen TOTH or heard anything that occurred over night. W1 stated he did not hear anything, nor did he see TOTH. W1 stated that when EF got into his vehicle, he told him to drive away fast, and that TOTH had just strangled him and threatened to kill him.

14. While I was at West Thumb, Supervisory U.S. Park Rangers (SR) Chuvarsky, SR Sweger, U.S. Park Rangers (USPR) Valladarez, Kennedy, and Gatewood located TOTH, who was driving his blue, old model, Ford truck with a topper, in the Fishing Bridge RV Park, on A-Loop. This vehicle matched a description given of TOTH's vehicle by EF.

Page **5** of **9**

**SWORN STATEMENT IN SUPPORT OF CRIMINAL COMPLAINT**
**UNITED STATES PARK RANGER JILL PAXTON**
*United States v. Gregory Michael Samuel Toth*

15. At approximately 0750 hours USPRs Gatewood and Kennedy informed TOTH, who was being detained in handcuffs in the rear of a marked patrol vehicle, of his Miranda rights.

16. Shortly thereafter, while working the scene of the arrest, TOTH called out to SR Chuvarsky "hey, may I talk to you man..." and engaged SR Chuvarsky in conversation about his detention and the case. SR Chuvarsky did not initiate the conversation. TOTH stated that he found "my girl's number" in EF's phone. TOTH stated, "I didn't hurt the dude...we're friends, we had an argument." TOTH stated he did not hold a knife to the victim's throat, but did "push him [the victim] on the fucking couch." SR Chuvarsky confirmed with TOTH what he had heard, and TOTH said, "I pushed him on the fucking couch man." TOTH then stated, "I was fucking pissed" and started to say, "I usually pun..." stuttered, and then said, "but he's my fucking friend." Near the end of their conversation, SR Chuvarsky affirmed that officers were there because of the altercation and TOTH said, "I figured that was what it was man." Later, TOTH stated, "I fucking shoved him in the chest and shit and pushed him on the couch. I held him down there." TOTH continually repeated that he neither held a knife to the victim's throat, nor put his hands on the victim's throat.

17. At one-point TOTH demonstrated, three times, while in belly chain handcuffs, a violent, open-handed striking motion when describing how he "shoved" and "pushed" the victim onto the couch to SR Chuvarsky. TOTH stated, "I am probably guilty of some fucking, fucking battery or something like that." SR Chuvarsky stated to TOTH that TOTH did lay hands on the victim to which TOTH replied, "I did that. But I didn't go to no fucking extreme... I was upset." TOTH said, "It's my bad."

**SWORN STATEMENT IN SUPPORT OF CRIMINAL COMPLAINT**
**UNITED STATES PARK RANGER JILL PAXTON**
*United States v. Gregory Michael Samuel Toth*

18. SR Chuvarsky later confirmed with TOTH that he was still willing to do a consensual blood draw, to which TOTH replied, "that shit's going to be hot anyway..."

19. After SR Chuvarsky's conversation with TOTH, USPR Gatewood approached him and told him that TOTH stated that he had "used dope" but TOTH did not specify what he "used dope." Both USPR Kennedy and Gatewood stated that he could smell the odor of an alcoholic beverage coming from TOTH's breath. TOTH's eyes were glassy and bloodshot and TOTH kept repeating the same things over and over again in a repetitive style. TOTH appeared confused by orders issued from officers on scene and reacted in a delayed manner to orders.

20. USPR Valladarez and SR Sweger searched TOTH's truck. I relayed to USPR Valladarez and SR Sweger several items that EF saw TOTH remove from the trailer. EF stated that as TOTH did not allow him out of his room, he was not sure of what was taken. USPR Valladarez and SR Sweger removed multiple items from the truck which matched the items I relayed to them. On the passenger floorboard of the truck, SR Sweger located a black folding knife which matched the description EF had given of the knife that was held against his throat. SR Sweger located a 750mL bottle of Vodka Smirnoff, with approximately ¾ inches of liquid left inside, on the bench seat of the vehicle, beside where TOTH was sitting. Beside the bottle of vodka was a metal baton.

21. While USPR Kennedy was searching TOTH, USPR Kennedy located 3 rolled marijuana joints in his pocket. TOTH stated that the joints were marijuana.

**SWORN STATEMENT IN SUPPORT OF CRIMINAL COMPLAINT**
**UNITED STATES PARK RANGER JILL PAXTON**
*United States v. Gregory Michael Samuel Toth*

22. Later, USPR Valladarez contacted W2 at the trailer he is assigned for work in the Lake Government Area. USPR Valladarez interviewed W2 about his involvement with the altercation that happened between TOTH and EF.

23. W2 stated he was traveling back to Yellowstone National Park from Cody, Wyoming with EF in the vehicle, when he overheard a conversation between TOTH and EF. W2 stated that he only recalled hearing EF saying "We have been boys for over 30 years I have done nothing to you. I don't know why you are acting like this to me. I got you a job and opportunity. I've never done anything to you, always been your friend." W2 stated after he heard EF say that EF hung up his phone.

24. During the time of the phone call EF was driving the vehicle that belonged to W2. W2 told EF to pull over so that he could drive. On their way back to Yellowstone EF said to W2, "I think that was him hurry get me to the camper." W2 stated that W2 tried to call someone to get the site location mangers phone number "to make sure his buddy [TOTH] was not tearing up his stuff" back at the trailer but that they did not get an answer from the site manager l.

25. Once they returned to the trailer, which is located at the Fishing Bridge RV Park, W2 helped EF bring in his groceries into the trailer from the vehicle. When W2 told EF that he was leaving to return to his trailer, EF stated that he did not want W2 to leave because he was afraid that TOTH would return. W2 told EF to call him if EF needed him to come back. W2 arrived at his trailer and stated that he did not hear from EF again.

**SWORN STATEMENT IN SUPPORT OF CRIMINAL COMPLAINT**
**UNITED STATES PARK RANGER JILL PAXTON**
*United States v. Gregory Michael Samuel Toth*

_____
U.S. Park Ranger Jill Paxton

Signed and sworn before me this 1st day of October 2021.

Mark L. Carman, Magistrate Judge United States District Court    _____
Name & Title of Judicial Officer                                  Signature of Judicial Officer

Page **9** of **9**

## PENALTY SUMMARY

**DEFENDANT NAME:**     GREGORY MICHAEL SAMUEL TOTH

**DATE:**     October 1, 2021

**INTERPRETER NEEDED:**     No

**VICTIM(S):**     Yes

**OFFENSE/PENALTIES:**

    **Ct: 1**   18 U.S.C. § 113(a)(3) (Assault with a dangerous weapon)

Up to 10 years Imprisonment
Up to 3 years Supervised Release
Up to $250,000 Fine
$100 Special Assessment

    **Ct: 2**   18 U.S.C. § 1201(a)(2) (Kidnapping)

Up to Life Imprisonment
Up to 5 years Supervised Release
Up to $250,000 Fine
$100 Special Assessment

    **Ct: 3**   36 C.F.R. § 2.30(a)(1) (Misappropriation of property)

Class B Misdemeanor
Up to 6 Months Imprisonment
Up to $5,000 Fine
5 Years' Probation
$10 Special Assessment

    **Ct: 4**   36 C.F.R. § 2.35(b)(2) (Possession of controlled substance – Marijuana)

Class B Misdemeanor
Up to 6 Months Imprisonment
Up to $5,000 Fine
5 Years' Probation
$10 Special Assessment

|  |  |  |
|---|---|---|
| | **Ct: 5** | 36 C.F.R. § 4.23(a)(1) (Operating a motor vehicle under the influence of alcohol or drugs) |
| | | Class B Misdemeanor<br>Up to 6 Months Imprisonment<br>Up to $5,000 Fine<br>5 Years' Probation<br>$10 Special Assessment |
| | **Ct: 6** | 36 C.F.R. § 4.14(b) (Open Container) |
| | | Class B Misdemeanor<br>Up to 6 Months Imprisonment<br>Up to $5,000 Fine<br>5 Years' Probation<br>$10 Special Assessment |
| **TOTALS:** | | 0 – Life Imprisonment<br>Up To $ 520,000 Fine<br>Up to 5 Years' Supervised Release<br>$ 240 Special Assessment |
| **AGENT:** | | Jill Paxton, US Park Service |
| **AUSA:** | | Stephanie A. Hambrick, Assistant United States Attorney |
| **ESTIMATED TIME OF TRIAL:** | | 1 to 5 days |
| **WILL THE GOVERNMENT SEEK DETENTION IN THIS CASE:** | | Yes |
| **ARE THERE DETAINERS FROM OTHER JURISDICTIONS:** | | No |